UNITED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. _____

DR. CHARLES GARRAMONE, an individual,

      Plaintiff,

       v.

DR. HOPE SHERIE, an individual; and THE
COSMETIC CONCIERGE, PLLC, a
North Carolina professional limited liability
company,

      Defendants.
_____/

## COMPLAINT

Plaintiff, Dr. Charles Garramone, an individual ("Dr. Garramone"), sues Defendants, Hope Sherie, an individual ("Dr. Sherie"), and The Cosmetic Concierge, PLLC, a North Carolina professional limited liability company (Dr. Hope Sherie and The Cosmetic Concierge, PLLC collectively be referred to as, "Concierge"), as follows:

## INTRODUCTION

1.     This is an action filed by Dr. Garramone, a world renown plastic surgeon and authority on female to male transgender chest surgery and body masculinization, to recover damages arising from Concierge's unauthorized use of Dr. Garramone's intellectual property in an attempt to intentionally confuse consumers into thinking Concierge's business is affiliated, connected, or associated with Dr. Garramone, and/or that Dr. Garramone approves or endorses Concierge's business.

1

2.      Concierge's actions were willful in nature, entitling Dr. Garramone to enhanced damages. Dr. Garramone seeks actual damages, an award of its attorneys' fees and costs, as well as injunctive relief.

<u>PARTIES, JURISDICTION AND VENUE</u>

3.      This is an action for trademark infringement, false advertising, and unfair competition under the United States Trademark Act, Title 15 U.S.C. §§ 1051, *et seq*. ("Lanham Act"), for trademark infringement under Florida common law and the Florida Trademark Act, Fla. Stat. § 495.161.

4.      This Court has original jurisdiction over claims arising under the Lanham Act pursuant to 28 U.S.C. § 1338(a), 28 U.S.C. § 1331 and 15 U.S.C. § 1121, in that they arise under the laws of the United States.  This Court has supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

5.      Dr. Garramone is an individual over the age of 18 years, and is otherwise *sui juris*.

6.      The Cosmetic Concierge, PLLC  is a North Carolina limited liability company that purports to operate a cosmetic and plastic surgery center.

7.      Dr. Sherie is an individual and a managing member of The Cosmetic Concierge, PLLC.  Dr. Sherie purports to be a plastic surgeon who performs the surgeries offered by The Cosmetic Concierge, PLLC, and who personally participated in, directed, controlled, and financially benefited from the unlawful conduct alleged herein.

8.      This Court has personal jurisdiction over Concierge, who have: (1) engaged in substantial and not isolated business activities in and directed to Florida; (2) minimum contacts with the State of Florida and the Southern District of Florida; (3) purposefully availed themselves of the privileges of conducting business in the State of Florida and in the Southern District of

Florida; (4) sought protection and benefit from the laws of the State of Florida; (5) regularly conducted business in the State of Florida and in the Southern District of Florida; and (6) committed tortuous acts within the Southern District of Florida.

9.     This Court has personal jurisdiction over Dr. Sherie and Concierge under the Florida long arm statute, Fla. Stat. 48.193, for at least the following reasons:

a.     on information and belief, Concierge uses the website www.cosmeticconciergemd.com, and has purposefully directed activity into Florida by soliciting and contracting with Florida residents to purchase its infringing services;

b.     Concierge's website www.cosmeticconciergemd.com is accessible to the residents of the Southern District of Florida;

c.     on information and belief, Concierge uses the website www.cosmeticconciergemd.com, to solicit and contract with patients from within Florida, by, among other things, offering to arrangements for lodging through its website, offering to make arrangements for caregivers, providing consumers an interface to request a consultation, providing an interface to schedule appointments with Concierge, providing an interface for consumers to ask medical questions to Dr. Sherie and interact with Concierge, providing an interface for consumers to submit information related to entering into a membership for cosmetic procedures, providing consumers an interface to submit applications for financing via third parties, providing consumers an interface to post reviews, providing an interface for a consumer to post comments, providing an interactive map

3

capable of providing directions to the office location, and, providing consumers hyperlinks to Concierge's social media accounts.  A copy of printouts of the multiple webpages demonstrating the above is attached as Exhibit A-1;

d.    on information and belief, Concierge directly solicits and has contracted with Florida residents through advertising its availability as a sex change doctor in Florida, on the website www.sexchangeoperation.net.  When on www.sexchangeoperation.net, clicking on an image of Florida on a map of the U.S. routes visitors of the website to another page having detailed information about Dr. Sheri as a doctor available to perform gender reassignment surgeries for Florida residents.  A copy of screenshots of the multiple pages illustrating such evidence from www.sexchangeoperation.net is attached as Exhibit A-2;

e.    on information and belief, Concierge solicits and has contracted with consumers in the Southern District of Florida by advertising on the FTM Surgery page on Facebook. Concierge uses prominently displayed interactive brochures in the feed on the FTM Surgery Fcebook page, which entices consumers to click on photographs taking consumers to Concierge's website.  A copy of printouts of webpages demonstrating such evidence from FTM Surgery page on Facebook is attached as Exhibit A-3;

f.    a Google internet search (in incognito mode) conducted for sex change surgeons from within the Southern District of Florida reveals that

4

Concierge is soliciting consumers in Florida by advertising on numerous websites, including, but not limited to, www.sexchangeoperation.net, www.ftmsurgery.net, and www.topsurgery.net.  Printouts of the multiple pages where Dr. Sherie solicits consumers from within Florida is attached as Exhibit A-4;

g.   on information and belief, Concierge has multiple prominently displayed paid advertisements on www.topsugery.net, each which entices consumers to click on photographs which takes consumers to Concierge's www.cosmeticconciergemd.com website in order to schedule a consultation.  A copy of printouts of the multiple pages and screenshots illustrating such evidence from www.topsurgery.net and www.cosmeticconciergemd.com is attached as Exhibit A-5;

h.   on information and belief, Concierge solicits and has contracted with consumers in Florida by displaying in its advertising a toll-free telephone number, to wit, 844-267-2666;

i.   on information and belief, based upon the small niche community of persons seeking surgeons to perform sexual reassignment surgeries, the small percentage of surgeons performing same, and the numerous avenues by which Concierge solicits consumers, consumers seeking a sexual reassignment surgeons from within the Southern District of Florida can easily find and contract with Concierge;

j.   on information and belief, Concierge has performed surgeries on patients hailing from within the Southern District of Florida, based upon

Concierge's advertisements directed to the Southern District of Florida;

k.    on information and belief, Dr. Sherie controls and manages the marketing and advertising of The Cosmetic Concierge, PLLC 's services, and purposefully directed The Cosmetic Concierge, PLLC 's Florida activities.

l.    Concierge has through its purposeful activities committed torts, including trademark infringement, within Florida.

10.    Concierge's contacts with Florida are sufficiently numerous and substantial such that subjecting Concierge to this Court's general and/or specific jurisdiction does not offend traditional notions of fair play and substantial justice.

11.    Venue is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

<u>FACTUAL ALLEGATIONS COMMON TO ALL COUNTS</u>

Dr. Garramone Registers and Continues to Use the MANSCULPTURE Mark

12.    Dr. Garramone has been and continues to be a world renown plastic surgeon and surgical authority on female to male transgender chest surgery and body masculinization. Dr. Garramone's practice exclusively serves the transgender community, as he performs surgical procedures for sexual reassignment patients exclusively, and performs hundreds of sexual reassignment surgeries per year.

13.    Dr. Garramone created and has been continually using, throughout the United States, internationally, and within the transgender community, the MANSCULPTURE  service mark (referred to herein as the "MANSCULPTURE Mark") since 2009.

14.    The MANSCULPTURE Mark is a name or designation that Dr. Garramone created to refer to his specific techniques and protocols, including, but not limited to, the use of liposuction to perform body masculinization, followed when performing female to male

transgender surgeries.

15.     On July 27, 2010, Dr. Garramone duly and legally registered in the United States Patent and Trademark Office ("USPTO"), on the Principal Register, the MANSCULPTURE Mark for cosmetic and plastic surgery, as Registration Number 3,823,547, and has used the MANSCULPTURE  Mark continuously in commerce since then.  A true and correct record of the registration of the MANSCULPTURE Mark is attached as Exhibit B.[1]

16.     On April 20, 2016, Dr. Garramone submitted to the USPTO a Combined Declaration of Use and Incontestability under Sections 8 & 15, a copy of which is attached as Exhibit C.  Accordingly, the MANSCULPTURE Mark is now incontestable pursuant to 15 U.S.C. §§ 1058 and 1065.

17.     The  USPTO recognizes the MANSCULPTURE Mark as being owned by Dr. Garramone and being associated with cosmetic and plastic surgeries.

18.     The  MANSCULPTURE Mark is fanciful and  inherently distinctive. Dr. Garramone has service and trademark rights in the MANSCULPTURE Mark in connection with cosmetic and plastic surgery.

19.     Since long prior to the acts of Concierge complained of herein, Dr. Garramone, via its advertisements, brochures, in-person sales, direct mailings, web sites, search engine optimization ("SEO") and  pay-per-click ("PPC") internet marketing and  advertising, has continuously been marketing and selling body masculinization cosmetic and plastic surgery procedures bearing the MANSCULPTURE Mark, in interstate commerce.

20.     Dr. Garramone  maintains a  website at  www.drgarramone.com, whereby he

---

[1] On January 29, 2013, Dr. Garramone also duly and legally registered in the USPTO, on the Principal Register, the MANSCULPTURE  trademark  for  undershirts,  as  Registration  Number  4,282,841,  and  has  used  the MANSCULPTURE trademark continuously in commerce since then.

advertises in Florida and in interstate commerce his female to male transgender body masculinization surgery procedures bearing the MANSCULPTURE Mark.

21.     Dr. Garramone has spent thousands of dollars on advertising for Dr. Garramone's cosmetic and plastic surgery procedures , and has aggressively marketed and sold his products and services under the MANSCULPTURE Mark.

22.     Since the registration of the MANSCULPTURE Mark in the USPTO, Dr. Garramone has used the registered notice symbol ® or "Registered in the U.S. Patent and Trademark Office" in association with the MANSCULPTURE Mark, as prescribed in 15 U.S.C. § 1111.

23.     Since long prior to the acts of Concierge complained of herein, Dr. Garramone has expended much money, time, and effort in promoting his goods and services under the MANSCULPTURE Mark.  As a result of Dr. Garramone's efforts, the MANSCULPTURE Mark have become famous and distinctive throughout the United States, the transgender community, and in this District, and is identified in the minds of consumers and others exclusively with Dr. Garramone's female to male transgender body masculinization surgeries and flattening undergarments.

24.     By virtue of long and continuous use, and since long prior to the acts of Concierge complained of herein, the MANSCULPTURE Mark have developed a goodwill and significance exclusively related to Dr. Garramone, has been readily recognizable by the public, the trade, and the transgender community, as a designation associated exclusively with Dr. Garramone's female to male surgeries.

Concierge Improperly Infringes Upon the MANSCULPTURE Mark

25.     Long subsequent to Dr. Garramone's adoption and use of the MANSCULPTURE Mark in commerce, Concierge commenced the use of the terms MANSCULPTING and

MALESCULPTING, in U.S. commerce, and within the United States, including the Southern District of Florida, in connection with advertisements for Concierge's female to male surgical procedures.  A reproduction of Concierge's website at http://cosmeticconciergemd.com/female-to-male-ftm/ demonstrating Concierge's infringing use of the MANSCULPTURE Mark by bearing the term MANSCULPTING is attached as Exhibit D.  A printout of Concierge's website at  demonstrating Concierge's infringing use of the MANSCULPTURE Mark by bearing the term MALESCULPTING is attached as Exhibit E.

26.     Concierge has advertised and promoted the identical services as those offered under the MANSCULPTURE service mark (i.e., cosmetic and plastic surgery) to the same class of consumers.

27.     A small percentage of the population seeks surgeons to conduct female to male transgender surgeries, and a small percentage of surgeons perform the same.

28.     Concierge has further sought to unlawfully profit from Dr. Garramone's MANSCULPTURE Mark by selling and marketing, under both the MANSCULPTING and MALESCULPTING mark, the same goods and services to the same class of consumers as those associated with the MALESCULPTING Mark.

29.     Upon information and belief, Concierge is well aware and, since long prior to the acts of Concierge complained of herein, has been well aware of the vast goodwill represented and symbolized by Dr. Garramone's MANSCULPTURE Mark.  Upon information and belief, Concierge has been well aware that Dr. Garramone's MANSCULPTURE Mark and widely recognized and relied upon by the public and the trade as identifying Dr. Garramone's masculinization cosmetic and plastic surgery procedures.

30.     Notwithstanding that knowledge, Concierge has engaged in, and will continue to

engage in, a deliberate and willful scheme to trade upon and to misappropriate for itself the vast goodwill represented and symbolized by Dr. Garramone's MANSCULPTURE Mark. The acts of Concierge complained of herein constitute willful and intentional infringement of Dr. Garramone's MANSCULPTURE Mark in total disregard of Dr. Garramone's rights.

31.     Concierge's use of the MANSCULPTURE Mark is without the consent, license, or permission of Dr. Garramone.

32.     On June 6, 2016, Dr. Garramone demanded that Concierge cease and desist from using the MANSCULPTURE Mark, and all variations thereof, including, but not limited to, MANSCULPTING. A copy of the June 6, 2016 cease and desist demand letter is attached as Exhibit F.

33.     On information and belief, Concierge, upon receiving from Dr. Garramone the June 6, 2016 cease and desist demand letter, revised its website advertisement for female to male surgical procedure to display the term MALESCULPTING, instead of the then-appearing term MANSCULPTING.

34.     On June 15, 2016, Dr. Garramone again demanded that Concierge cease and desist from using the MANSCULPTURE Mark, and all variations thereof, including, but not limited to, MALESCULPTING. A copy of the June 15, 2016 cease and desist demand letter is attached as Exhibit G.

35.     Despite Dr. Garramone's demands, Concierge has failed and refused to cease its unauthorized activities.

36.     Concierge's confusingly similar use of Dr. Garramone's MANSCULPTURE Mark is designed to, calculated to and has and is likely to, cause confusion and mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Concierge's female

to male surgical procedure. Concierge's confusingly similar use of Dr. Garramone's MANSCULPTURE Mark has and/or is likely to cause the same class of customers and prospective customers to believe that Concierge's female to male surgical procedure is Dr. Garramone's, or is sponsored, licensed, authorized, or approved by Dr. Garramone, all to the detriment of Dr. Garramone, the trade, and the public.

37.     All conditions precedent to the maintenance of this action have occurred, been performed, or are otherwise excused.

38.     Dr. Garramone has been required to retain the undersigned counsel to enforce his rights through this action and has agreed to pay his counsel a reasonable fee for those services.

<u>COUNT I</u>
<u>TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT: 15 U.S.C. § 1114</u>

39.     Dr. Garramone incorporates herein each and every allegation set forth in paragraphs 1 through 37 as if fully set forth herein.

40.     Concierge's unlawful use in commerce of the MANSCULPTURE Mark infringes upon Dr. Garramone's rights in his federally registered and protected MANSCULPTURE Mark.

41.     Concierge's unlawful use in commerce of Dr. Garramone's MANSCULPTURE Mark in Concierge's sales and advertising has caused, and is likely to cause, consumers, distributors, retailers and others to mistakenly believe that Dr. Garramone has sponsored or approved Concierge's conduct, or that Dr. Garramone is affiliated with Concierge, or that Concierge has obtained permission to engage in the sales and advertising activities. By its confusingly similar use of the MANSCULPTURE Mark, Concierge further creates confusion as to the source of the services that Concierge sells, and/or whether Dr. Garramone has endorsed Concierge or the services that Concierge sells.

42.     Concierge's confusingly use of the MANSCULPTURE Mark in its sales,

marketing and advertising activities is dilutive of the MANSCULPTURE Mark.

43.     Concierge is believed to have engaged in the above conduct negligently.

44.     Dr. Garramone has demanded that Concierge cease and desist from its acts of infringement and has given Concierge actual notice of Dr. Garramone's registration of the MANSCULPTURE Mark, but Concierge has refused to cease the above described conduct.  By this conduct, Concierge has made substantial profits to which Concierge is not in equity or good conscience entitled.

45.     As a direct and proximate result of Concierge's conduct, Dr. Garramone has incurred damages in an amount to be determined, and unless restrained by this Court, Dr. Garramone has no adequate remedy at law.

46.     In the alternative, Concierge has willfully and deliberately violated Dr. Garramone's rights in the MANSCULPTURE Mark by using confusing similar marks (i.e. MANSCULPTING and MALESCULPTING) with the purpose and intent of causing confusion such that Dr. Garramone is entitled to the remedies set forth in 15 U.S.C. §1117, in addition to injunctive relief.  Concierge's willful and deliberate acts involve such circumstances that treble damages and reasonable attorneys' fees and costs should be assessed against Concierge pursuant to 15 U.S.C. §1117.

COUNT II
FALSE ADVERTISING/UNFAIR COMPETITION
UNDER THE LANHAM ACT: 15 U.S.C. § 1125

47.     Dr. Garramone incorporates herein each and every allegation set forth in paragraphs 1 through 45 as if fully set forth herein.

48.     Confusingly similar use of the MANSCULPTURE Mark by Concierge in the course of selling and marketing cosmetic and plastic surgery procedures is a use in interstate commerce of words and/or symbols that give a false designation of origin, and/or a false

description or representation regarding these services to the consuming public.

49.     Concierge is believed to have engaged in the above conduct negligently. In the alternative, Concierge has engaged in the above activities willfully, or with reckless disregard for whether Concierge's activities would cause injury to Dr. Garramone.

50.     Such use has misled and deceived, and will continue to mislead and deceive, the public into believing that Concierge's cosmetic and plastic surgery procedures originate from Dr. Garramone, are provided by Dr. Garramone, are licensed by Dr. Garramone, or are in some way sanctioned by, or otherwise affiliated with, Dr. Garramone.

51.     Concierge's unauthorized association of its cosmetic and plastic surgery practice - through its use in interstate commerce of the MANSCULPTURE Mark in its promotion, marketing, advertising distribution and sales – has resulted in profits to Concierge and has thereby deprived Dr. Garramone of revenue to which he is entitled.

52.     Concierge has used and continues to use the MANSCULPTING Mark in connection with its promotion, marketing, advertising, and sales in commerce of its female to male cosmetic and plastic surgery procedure, with actual or constructive knowledge of Dr. Garramone's long and extensive prior use of the MANSCULPTING Mark.

53.     Furthermore, Concierge has promoted, advertised, marketed, and sold, in interstate commerce, its competing female to male cosmetic and plastic surgery services by using the MANSCULPTING Mark in such a manner so as to falsely designate origin or association with Dr. Garramone's famous name and the MANSCULPTING Mark, and so as to inevitably cause confusion or mistake among purchasers and potential purchasers as to the true origin, source, sponsorship, or affiliation of Concierge's female to male cosmetic and plastic surgery procedures, all to Concierge's profit, and to Dr. Garramone's injury.

54.     By so infringing on the MANSCULPTURE Mark in interstate commerce, Concierge violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.     As a direct and proximate result of Concierge's conduct, Dr. Garramone has incurred damages in an amount to be determined, and is entitled to the remedies provided for in 15 U.S.C. §§ 1116, *et seq*.

## COUNT III
## TRADEMARK INFRINGEMENT UNDER FLORIDA COMMON LAW

56.     Dr. Garramone incorporates herein each and every allegation set forth in paragraphs 1 through 54 as if fully set forth herein.

57.     Long before Concierge's activities complained of herein, Dr. Garramone acquired trademark rights in the inherently distinctive MANSCULPTURE Mark under Florida common law.

58.     Concierge has unlawfully, and without Dr. Garramone's consent, used Dr. Garramone's MANSCULPTURE Mark in commerce in the State of Florida in connection with cosmetic and plastic surgery, to the benefit of Concierge and to the detriment of Dr. Garramone.

59.     Concierge's aforesaid acts constitute infringement, misappropriation, and misuse of Dr. Garramone's MANSCULPTURE Mark in violation of Dr. Garramone's rights under the common law of the State of Florida.

60.     Concierge's unlawful use in commerce of the MANSCULPTURE Mark in Concierge's sales and advertising has caused, and is likely to cause, consumers and others to mistakenly believe that Dr. Garramone has sponsored or approved Concierge's conduct, or that Dr. Garramone is affiliated with Concierge, or that Concierge has obtained permission to engage in the sales and advertising activities.  By using the MANSCULPTURE Mark, Concierge further

creates confusion as to the source of the services that Concierge sells, and/or whether Dr. Garramone has endorsed Concierge or the services that Concierge sells.

61.     Concierge's aforesaid acts have caused and/or will cause great and irreparable injury to Dr. Garramone, and unless said acts are restrained by this Court, they will continue to harm Dr. Garramone.

62.     Dr. Garramone has no adequate remedy at law.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, Charles Garramone, prays for:

A.     Judgment that Defendants, Hope Sherie and The Cosmetic Concierge, PLLC, have infringed Dr. Garramone's MANSCULPTURE Mark, and Defendants have competed unfairly with Dr. Garramone in violation of Dr. Garramone's rights under the Lanham Act, 15 U.S.C. § 1125, Florida common law, Florida Statute § 495.161.

B.     An injunction, pursuant to 15 U.S.C. § 1116, prohibiting Defendants and all of their members, officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, from:

1)     using Dr. Garramone's MANSCULPTURE Mark and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademarks similar thereto or likely to be confused therewith, in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

2)     using any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Defendants, or of any third parties, are sponsored by, authorized by,

or in any way associated with Dr. Garramone;

3) infringing Dr. Garramone's MANSCULPTURE Mark;

4) falsely representing themselves as being connected with Dr. Garramone, or sponsored by or associated with Dr. Garramone, or engaging in any act which is likely to falsely cause the trade, retailers, and/or members of the purchasing public to believe that Defendants are associated with Dr. Garramone; and

5) affixing, applying, annexing, or using in connection with the sale of any goods or services sold by Defendants including, without limitation, cosmetic and plastic surgery procedures, a false description or representation including words tending to falsely describe or represent such goods or services as being those of Dr. Garramone and from offering such goods or services in commerce.

C. An injunction requiring Defendants and all of their officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, Judgment to:

1) recall all brochures, goods, packaging, online ads, printed advertisements, exterior signs, and other written or printed material in the possession or control of Defendants which bear the MANSCULPTURE Mark or any variation thereof, including but not limited to the words "MANSCULPTING," "MALESCULPTING," and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademarks similar thereto or likely to be confused therewith, alone or in combination with any other word or element, and all plates, molds, matrices, and other means from making the aforesaid items; and

2)     file a written report with this Court that details, under oath, the manner of compliance with the paragraph above and to serve the same upon Dr. Garramone within thirty (30) days after service of the injunction issued in this action.

D.     An award of damages of Dr. Garramone arising from Defendants acts of trademark infringement and unfair competition, as well as Defendants' profits, pursuant to 15 U.S.C. § 1117 and/or reasonable royalties;

E.     An award of actual damages for Dr. Garramone, to be determined at trial, pursuant to 15 U.S.C. § 1117 and § 501.211, Florida Statutes, and trebled upon a determination that Defendants' infringement has been and is willful, pursuant to 15 U.S.C. § 1117, together with prejudgment interest and costs;

F.     An award of attorney fees for Dr. Garramone pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 505.

G.     An award of Dr. Garramone's taxable costs, post-judgment interest, and such other and further relief as the Court may deem just and proper.

H.     Grant to Dr. Garramone whatever and further relief, either in law or in equity, to which this honorable Court deems them fit to receive.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b), Fed. R. Civ. P., Defendant demands a trial by jury of all issues triable as of right to a jury.


Dated: August 8, 2016

Respectfully Submitted,

  /Derek Fahey/

Derek R. Fahey, Esq.
The Plus IP Firm, PLLC
101 N.E. 3rd Ave., Suite 1500
Fort Lauderdale, Florida 33301
Telephone: (954) 332-3584
Email: Derek@plusfirm.com;
info@faheyiplaw.com